Gabrielli, J.
On this appeal, the defendant challenges the constitutionality of subdivision 5 of section 421 of the Election *368 Law which provides that: "[a]ny person who: * * * 5. Fraudulently or wrongfully does an act tending to affect the result of any election at a political caucus or of any primary election or convention * * * Is guilty of a misdemeanor.”
The defendant was charged with an attempt to violate this section of the Election Law in that she tried to affect the result of a primary election by offering Thomas W. Patton the sum of $1,000 to induce him not to be a candidate in the Democratic primary for the office of Councilman in the Incorporated City of Long Beach at the election on September 14, 1971. Patton testified that in the spring of 1971 he became interested in becoming a candidate for the office of City Council and that to this end he planned to run in the September Democratic primary as part of an insurgent Democratic ticket. Defendant, who was affiliated with the incumbent Democratic officeholders, contacted Patton on July 1, 1971 and arranged to pick him up at his home for a luncheon appointment. At this meeting, Patton informed the defendant that he probably would not run in the primary election for City Council because he had strong reservations about two of his proposed running mates. Patton testified that the defendant then offered him several jobs with the City of Long Beach which he declined. According to Patton, the defendant then said, "Why don’t you take some money?” When Patton informed her that he would accept $1,000, the defendant responded that she would give him $500 the following day and $500 after the primary election.
Pursuant to this agreement, defendant’s secretary arrived at the Patton residence on July 2, 1971 and handed Patton a book which contained a taped envelope with five $100 bills. These acts were photographed by witnesses to the transaction.
The defendant’s secretary, who had received immunity from the Grand Jury at the time of the trial, substantiated Patton’s account of what had transpired. More specifically, she testified that the defendant had stated that Patton "was bought off very cheap * * * 'one thousand dollars, five hundred dollars now and five hundred dollars’ ” after the primary. The secretary further testified that on July 2, 1971 defendant gave her an envelope containing $500, told her to tape the envelope to a book, and instructed her to give the book and its contents to Patton.
For these acts, the defendant was convicted, after a jury trial, of the crime of an attempt to violate subdivision 5 of *369 section 421 of the Election Law, a class B misdemeanor; and she was sentenced by the Nassau County Court to a term of 15 days in the Nassau County Jail and a fine of $500.
Subsequently, the Appellate Term of the Second Judicial Department, Ninth and Tenth Judicial Districts, modified the judgment of the trial court by deleting the 15-day period of imprisonment and, as so modified, affirmed the judgment of conviction.
On appeal to this court, the defendant contends that subdivision 5 of section 421 of the Election Law is constitutionally defective in two respects: first, it is argued that the subdivision is impermissibly vague inasmuch as it does not afford a person of ordinary intelligence a reasonable opportunity to know exactly what type of conduct is proscribed; and, secondly, it is asserted that the statute, even assuming that it is lacking neither clarity nor precision, is void for overbreadth since its prohibition extends to constitutionally protected conduct. As to the overbreadth argument, the appellant does not claim that, as applied to her, the enactment has punished protected activity, but rather she contends that the subdivision is overbroad on its face. However, since an overbroad law deters privileged endeavors, it has consistently been held that there is no requirement that the individual making the attack demonstrate that his or her conduct could not be regulated by a statute drawn with the requisite specificity (Dombrowski v Pfister, 380 US 479, 486; Cameron v Johnson, 390 US 611, 617; Grayned v City of Rockford, 408 US 104,114-115).
In People v Grogan (260 NY 138) this court discussed the criteria by which statutes are to be evaluated in determining whether or not they are a legitimate and permissible regulation of conduct. Judge Crane expressed this principle by stating that (p 145): "Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. 'Laws which create crimes ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid.’ (United States v Brewer, 139 US 278, 288; Nash v United States, 229 US 373; International Harvester Co. v Kentucky, 234 US 216; McBoyle v United States, 283 US 25-27; Cline v Frink Dairy Co., 274 US 445, 459.)”
*370 Subsequently, in People v Bell (306 NY 110, 113) we wrote that "[i]t is a familiar canon of construction that the intent with which statutes have been enacted 'is to be collected from the context, from the occasion and necessity of the law, from the. mischief felt, and the objects and the remedy in view’. (1 Kent’s Comm., p 462; People ex rel Parker Mills v Commissioners of Taxes of City of N. Y. 23 NY 242, 244.)” More recently, this court in People v Pagnotta (25 NY2d 333, 337) restated the time honored principles of statutory construction of penal enactments and held that "a statute must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him.” In the same casé, we noted once again that there is a strong presumption that a statute duly enacted by the Legislature is constitutional. Moreover, the weighty presumptive validity with which every legislative enactment is cloaked is overborne only when the law is demonstrated to be invalid beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37, 40).
Applying these criteria to the instant statute, we note that subdivision 5 of section 421 of the Election Law traces its history to section 751 of the former Penal Law, and, in fact, utilizes basically the same language as its predecessor. It has been held that section 751 of the former Penal Law was enacted to prevent corrupt bargaining for public office and unfair primary election practices (People v Willett, 213 NY 368). Our research discloses only two prior decisions in which subdivision 5 has been considered by the courts of this State (People ex rel. Willett v Quinn, 150 App Div 813, 820; People v Kaufman, 260 App Div 1011), and neither of these cases is dispositive of the constitutional issues raised by the appellant.
We hold that subdivision 5 of section 421 of the Election Law is not impermissibly vague, that it is a reasonable restriction upon the individual for the public good (People v Bunis, 9 NY2d 1, 4; see, also, People v Pagnotta, 25 NY2d 333, 337-338, supra), and that the subdivision is not void for over-breadth. While we agree with the appellant’s assertion that the subdivision is marked by flexibility, rather than meticulous specificity, we think it is readily apparent that the enactment is designed to outlaw any fraudulent or wrongful act tending to affect the result of a primary election. In the instant case, the appellant’s acts were both fraudulent and wrongful, and any person of ordinary intelligence would per *371 ceive them to be such. "Fraudulent”, the crucial word of subdivision 5 of section 421 of the Election Law obviously connotes the idea of a deliberate deception (to be committed upon the electorate) and a corrupt act to prevent a free and open election. Furthermore, in view of the innumberable methods by which a primary election may be tampered with, we can appreciate the Legislature’s inability to articulate with precision each and every prohibited transaction. As Mr. Justice Frankfurter noted in Winters v New York (333 US 507, 525), if the law was framed with narrow particularity, easy and numerous opportunities would be afforded to nullify the purposes of the legislation. Thus, in an area such as this it is virtually impossible for the Legislature to be explicitly particular, since all it can do is enunciate a certain and definite variety of acts which are proscribed. Having concluded that an individual of ordinary intelligence would know that paying a prospective political candidate not to run in a primary election would constitute a fraudulent act tending to affect the primary, it ill behooves the appellant, who is an attorney, to assert that she failed to appreciate the fact that such conduct was forbidden on the ground that the statute is allegedly vague or overbroad.
We likewise reject appellant’s contention that the trial court’s charge to the jury was erroneous. At this juncture, it is unnecessary that we consider the alleged improprieties of the court’s instructions, since defense counsel, by failing to interpose an exception thereto, has not preserved any such alleged error for review on appeal (People v Bester, 297 NY 408; People v Feld, 305 NY 322; People v Reynolds, 25 NY2d 489).
The order of Appellate Term should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.