THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERBERT EHINGER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SUZANNE MAREL, Also Known as SUZANNE MARIAL, Appellant.

First Department, November 21, 1989

### APPEARANCES OF COUNSEL

*Laurie Sapakoff* of counsel *(James M. McGuire* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Robert C. Dorf* of counsel *(Dorf & Perlmutter,* attorneys), for Herbert Ehinger, appellant.

*Trevor Headley* for Suzanne Marel, appellant.

### OPINION OF THE COURT

WALLACH, J.

In June 1987 the 27-year-old male victim in this case, Hirokai Murai, placed an ad for a roommate in the Village Voice. Shortly thereafter, after responding to the ad, defendants moved into Murai's East 19th Street apartment in the Borough of Manhattan and together occupied the living room as their sleeping quarters. The July rent check tendered by

defendant Ehinger bounced. An argument over this problem developed, which ended in the bloody beating of Murai by Ehinger and Murai being handcuffed and bound with electric cord. For the next five days defendants made Murai a prisoner in his own home and inflicted continuous and outrageous cruelties upon him consisting, among other things, of physical abuse, starvation, humiliation of their captive in the course of his bodily functions, hair burning, and an attempt to rotate a knife inside the victim's rectum. The object of this sadistic terrorism was to extort money from Murai by coercing him to reveal the secret access code on his Citibank card. The program of savage intimidation succeeded when Murai at last disclosed the code, and defendants promptly stole over $4,000 from Murai's bank account. Defendants also looted a substantial portion of Murai's personal property by removing it to a hotel room where Marel had registered.

Following a jury trial, defendants were convicted of the crime of kidnapping in the first degree under the following pertinent sections of the statute (Penal Law § 135.25).

"A person is guilty of kidnapping in the first degree when he abducts another person and when * * *

"2. He restrains the person abducted for a period of more than twelve hours with intent to * * *

"(b) Accomplish or advance the commission of a felony".

Penal Law § 135.00 (2) as pertinent here defines abduct as follows: " 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found".

■ On this appeal defendants contend that their kidnapping convictions should be vacated because this statutory reference to a place where the victim "is not likely to be found" is either constitutionally void for vagueness or, in the alternative, that Murai's apartment falls outside the statutory definition as a matter of law. Defendants never raised these claims either by motion addressed to the indictment or any objection made to the trial court, and therefore they have not been preserved for appellate review (People v Iannelli, 69 NY2d 684, cert denied 482 US 914). Because an alleged error is assertedly of constitutional dimension does not create an exception to this rule (see, People v Thomas, 50 NY2d 467, 473).

■ Nor do we find this statutory language impermissibly vague. In People v Nelson (69 NY2d 302), the Court of Appeals

was confronted with the argument that Penal Law § 165.25, the statute defining the crime of "jostling", as committed "when, in a public place, he [defendant] intentionally and unnecessarily: 1. Places his hand in the proximity of a person's pocket or handbag". The statutory reference to "unnecessarily" was urged by defendant as having incorporated an unconstitutionally vague standard into the statute. The court held that "unnecessarily" gave sufficient notice of the proscribed conduct, and further observed "It has often been said, however, that, except in rare circumstances not relevant here, a vagueness challenge must be addressed to the facts before the court * * *. Thus, if the actions of the defendants are plainly within the ambit of the statute, the court will not strain to imagine marginal situations in which the application of the statute is not so clear" *(supra,* at 308).

The same considerations apply to the facts before us in this case, since the proscribed conduct, in order to constitute the crime, must be coupled with restraint of the victim for over a 12-hour period. As was stated in *Quintard Assocs. v New York State Liq. Auth.* (57 AD2d 462, 465, *mot to dismiss appeal granted* 42 NY2d 973): "The void-for-vagueness doctrine embodies a 'rough idea of fairness' *(Colten v Kentucky,* 407 US 104, 110) and the most common standard by which the sufficiency of statute is measured when attacked for vagueness is that it must not be so drawn that men of common intelligence must necessarily guess at what conduct is prohibited *(Broadrick v Oklahoma,* 413 US 601, 607; *People v Lang,* 36 NY2d 366, 369, *supra; People v Byron,* 17 NY2d 64, 67, *supra)."*

The statutory reference here to a place where a victim is not likely to be found passes constitutional muster under this test. *(See, Kovacs v Cooper,* 336 US 77, which upheld an antinoise ordinance which prohibited "loud and raucous noises".)

■ Defendants' alternative contention assumes clarity in the statute, and submits that the apartment of an urban dweller is, as a matter of law, a place where he is most (rather than less) likely to be found. This argument, also, has not been preserved by any motion to dismiss or request to charge which might have focused the jury's attention upon this particular element of the offense, which in fact was charged by the court without objection by the defense as to form or substance. This omission forecloses our consideration of the issue now raised for the first time *(see, People v Dekle,* 56 NY2d 835).

Even if we were to note this argument in the interest of justice we would find it unpersuasive. The degree of likelihood or unlikelihood of discovery of the victim's hiding place simply presented a factual question for the jury to resolve in light of all the circumstances of the abduction and restraint, and is not susceptible to disposition as a matter of law on this record. As noted long ago by Edgar Allan Poe's great detective, C. Auguste Dupin, in the case of "The Purloined Letter", sometimes the most effective way to conceal something may be to leave it in plain view. Surely, this jury was free to find that the isolation of a Japanese music student, with few local friends or acquaintances, could be most effectively accomplished by imprisonment in his own home in the very manner carried out by defendants. Indeed, defendants were successful in fobbing off the police on their first visit to the door of the apartment when the officers were summoned to the premises by an alarmed neighbor.

We have examined the other contentions of defendants and find them without merit.

Accordingly, the judgment, Supreme Court, New York County (Franklin R. Weissberg, J., at trial and sentence; John A. K. Bradley, J., at *Clayton* motion), rendered May 24, 1988, which convicted appellant Ehinger, after a jury trial, of kidnapping in the first degree, robbery in the first and second degrees and grand larceny in the third degree, and sentenced him to concurrent terms of 20 years to life, 7 to 21 years, 4 to 12 years, and 1 to 3 years, respectively; and judgment of said court (Franklin R. Weissberg, J.), rendered on May 24, 1988, which convicted appellant Marel of kidnapping in the first degree and grand larceny in the third degree and sentenced her to concurrent terms of 16 years to life and 1 to 3 years, respectively, are affirmed.

MURPHY, P. J., KUPFERMAN, KASSAL and SMITH, JJ., concur.

Judgments, Supreme Court, New York County, rendered on May 24, 1988, unanimously affirmed.